[841 NYS2d 130]

In the Matter of GOVERNMENT EMPLOYEES INSURANCE COMPANY, Respondent, v ISABEL LOPEZ et al., Respondents, and TRAVELERS INDEMNITY COMPANY, Appellant, et al., Proposed Additional Respondents.

Second Department, August 21, 2007

## APPEARANCES OF COUNSEL

*Karen C. Dodson*, Melville (*Carol Simonetti* of counsel), for appellant.

*Darienzo & Lauzon* (*Montfort, Healy, McGuire & Salley*, Garden City [*Donald S. Neumann, Jr.* of counsel]), for respondent.

## OPINION OF THE COURT

COVELLO, J.

The question presented for our consideration is whether a "premium finance agency" that sought to cancel an "assigned risk" automobile insurance policy because of the insured's failure to make required payments under the "premium finance agreement" had to advise the insured of a particular "right of review" in order for the cancellation to be effective. For the reasons that follow, we answer that question in the negative.

Pursuant to an assigned risk automobile insurance policy that was effective April 12, 2002 (hereinafter the insurance policy), and issued pursuant to the rules of the New York Automobile Insurance Plan (hereinafter the NYAIP) (*see* Insurance Law § 5301 [a]), Travelers Indemnity Company (hereinafter Travelers) insured Danngy Montoya's car. Montoya financed his insurance premiums by entering into a premium finance agreement (hereinafter the agreement) with an entity known as the Capitol Payment Plan (hereinafter Capitol), which was a premium finance agency. The agreement contained a power of attorney, which authorized Capitol to cancel the insurance policy in the event that Montoya defaulted on the payments that he was required to make under the agreement (*see* Banking Law § 576 [1]).

In a notice of cancellation that purportedly was effective on August 1, 2002, Capitol advised Montoya that it had cancelled

the insurance policy pursuant to the power of attorney. Indeed, Montoya had defaulted on his payments under the agreement.

On September 4, 2002, Montoya, who was driving his car in Queens County, collided with a vehicle occupied by Isabel Lopez, John Lopez, and Alba Ramones, who allegedly were injured. After the accident, the Lopezes and Ramones, who maintained that Montoya's car was uninsured, and who sought uninsured motorist coverage in connection with the accident, submitted a demand for arbitration to the petitioner Government Employees Insurance Company (hereinafter GEICO), which insured the vehicle they occupied.

On or about December 5, 2002, GEICO, which maintained that Montoya's car was insured under the insurance policy issued by Travelers, commenced the instant proceeding, seeking to permanently stay arbitration. According to GEICO, which named Travelers as a proposed additional respondent, the notice of cancellation was ineffective, as Capitol failed to advise Montoya that he had a right to have the NYAIP's "Governing Committee" review the cancellation of the insurance policy.

The Supreme Court agreed with GEICO that Capitol's failure to include language in the notice of cancellation advising Montoya of a right of review rendered the cancellation of the insurance policy ineffective. Accordingly, in an order and judgment dated April 23, 2004, the Supreme Court granted the petition, permanently stayed arbitration, and directed Travelers to provide Montoya with automobile coverage. Thereafter, in an order entered May 9, 2005, the Supreme Court, in effect, granted Travelers' motion for leave to reargue and, in effect, upon reargument, adhered to its prior determination. Travelers appeals from the order entered May 9, 2005.

We conclude that Capitol was not required to advise Montoya of a right of review, and that the insurance policy was effectively cancelled. Indeed, at the time Capitol sent Montoya the notice of cancellation, there was no statute or NYAIP rule requiring a premium finance agency that cancelled an assigned risk automobile insurance policy to advise an insured that the insured had a right to have the NYAIP's Governing Committee review that cancellation.

We begin with the fundamental premise that in New York State, all motor vehicle owners must have their vehicles insured (*see* Vehicle and Traffic Law § 312 [1] [a]). However, some owners, who are perceived by insurance companies to pose unreasonable risks, are unable to obtain insurance coverage for their

vehicles (*see Matter of Insurance Premium Fin. Assn. of N.Y. State v New York State Dept. of Ins.,* 88 NY2d 337, 340 [1996]). In order to ensure that such owners are able to obtain automobile insurance, the Legislature authorized the Superintendent of Insurance to approve a "reasonable plan" that required insurers who write automobile insurance policies in the state to provide those owners with automobile insurance coverage (*see* Insurance Law § 5301 [a]). The NYAIP, which is administered by the Superintendent of Insurance and a 15-member Governing Committee (*see Matter of Insurance Premium Fin. Assn. of N.Y. State v New York State Dept. of Ins., supra* at 341-343), then promulgated a set of rules governing the rights and liabilities of the motor vehicle owners who are insured under assigned risk automobile insurance policies (*see Aetna Cas. & Sur. Co. v O'Connor,* 8 NY2d 359, 362-364 [1960]; *Matter of Bowley Assoc. v State of N.Y. Ins. Dept.,* 98 AD2d 521, 526 [1984], *affd* 63 NY2d 982 [1984]).

In addition to the problems that these motor vehicle owners face in obtaining insurance, they are often unable to pay the premiums for their assigned risk automobile insurance policies (*see Matter of Insurance Premium Fin. Assn. of N.Y. State v New York State Dept. of Ins., supra* at 341). To assist the owners in paying the premiums, the Legislature has authorized premium finance agencies to enter into premium finance agreements, pursuant to which the premium finance agency pays the premiums on the insured's behalf (*id.; see* Banking Law art XII-B).

Where, as here, an insured fails to make a required payment under a premium finance agreement, and has given the premium finance agency a power of attorney authorizing it to cancel the assigned risk automobile insurance policy, the premium finance agency can do so pursuant to certain procedures set forth in Banking Law § 576 (1). As part of the process, the agency is required to mail to the insured, inter alia, a cancellation notice (*see* Banking Law § 576 [1] [c], [d]). A premium finance agency's failure to comply with these procedures is "fatal" to the agency's attempt to cancel the policy (*Matter of ELRAC, Inc. v White,* 299 AD2d 546, 547 [2002]; *see Sea Ins. Co. v Kopsky,* 137 AD2d 804, 804-805 [1988]).

While Banking Law § 576 (1) (c) and (d) set forth detailed requirements for the form and content of the cancellation notice that a premium finance agency must send to the insured, these provisions do not require the agency to advise the insured

that he or she has the right to have the NYAIP's Governing Committee review the cancellation of the assigned risk automobile insurance policy. Thus, it would follow that Capitol's failure to advise Montoya of such a right did not violate any statutorily-imposed requirement.

The question then becomes whether Capitol's failure to advise Montoya that he had the right to have the NYAIP's Governing Committee review the cancellation of the insurance policy violated the NYAIP's rules.[1] If that is the case, the cancellation was ineffective (see Aetna Cas. & Sur. Co. v O'Connor, supra at 362-364; Matter of Bowley Assoc. v State of N.Y. Ins. Dept., supra at 526). However, we find that the NYAIP's rules were not violated.

In 1987, the NYAIP's rules did not specifically address the issue of whether an insured had the right to have the NYAIP's Governing Committee review a premium finance agency's cancellation of the assigned risk automobile insurance policy.[2] Two years later, the rules were amended, so as to add the following paragraph to section 18 (1), which is entitled "Cancellation at Request of Insured": "Cancellation by a premium finance company acting pursuant to a power of attorney granted by the insured is deemed to be a cancellation at the request of the insured. An insured has no right of review of such cancellation action by the Governing Committee of the [NYAIP]."

Then, in 1992, the NYAIP's rules were again amended. The rules in effect at the time Capitol mailed the notice of cancella-

---

**1.** We note that on July 1, 2006, which was approximately four years after Capitol sent Montoya the subject notice of cancellation, the following note was added to section 19 of the NYAIP's rules: "An insured has no right of review or appeal of a cancellation of a policy by a premium finance company acting under a Power of Attorney or right authorized by the insured pursuant to the provisions of a Premium Finance Agreement." Thus, the NYAIP's rules now make it clear that an insured has no right to have the NYAIP's Governing Committee review a premium finance agency's cancellation of an assigned risk automobile insurance policy, which necessarily means that the insured need not be advised of such a right in order for the cancellation to be effective.

**2.** In Roth v Aetna Life & Cas. Ins. Co. (128 AD2d 514, 515 [1987]), which was decided in 1987, this Court held that a premium finance company that cancelled an assigned risk automobile insurance policy had to advise the insured that he or she had a right to have the NYAIP's Governing Committee review the cancellation of the policy in order for the cancellation to be effective (contra Aetna Cas. & Sur. Co. v Preisigke, 139 AD2d 900, 901 [1988]). However, as will be seen from the discussion infra, in light of certain amendments to the NYAIP's rules in the 20 years since Roth was decided, circumstances have changed so as to make it clear that Roth should no longer be followed (see Brennin v Perales, 163 AD2d 560, 562 [1990]).

tion at issue were, in relevant part, the same as the rules as amended in 1992. The aforementioned addition to section 18 (1) of the NYAIP's rules, as added in 1989, was removed from that section in 1992. Moreover, section 18 (5), which was entitled "Cancellation under a Premium Finance Agreement," was added. This addition provided as follows:

> "Cancellation of a policy under a Premium Finance Agreement shall be on a pro-rata basis subject to a minimum earned premium on the policy of ten percent of the gross premium or $60, whichever is greater. An Insured has no right of review of such action by the Governing Committee of the [NYAIP]."

Thus, the NYAIP's rules no longer specifically indicated that "[c]ancellation" of an assigned risk automobile insurance policy "by a premium finance company acting pursuant to a power of attorney granted by the insured [was] deemed to be a cancellation at the request of the insured." Similarly, the rules no longer specifically indicated that the insured had "no right of review of such cancellation." Nevertheless, we find that the rules, as amended in 1992, and as they existed when Capitol mailed the notice of cancellation at issue, did not provide that an insured had a right of review of a premium finance agency's cancellation of an assigned risk automobile insurance policy, much less require the agency to advise the insured of such a right in order for the cancellation to be effective.

First, section 19 of the NYAIP's rules, which is entitled "RIGHT OF REVIEW AND APPEAL," provided that "an insured given notice of cancellation of insurance . . . may request that such action be reviewed by the [Governing Committee]." However, this applies only to notice given "under Section 18, subsection 2" of the rules, which pertains to cancellations by the insurer. Thus, while the rules did indicate that the insured had a right of review of a cancellation, and had to be advised of that right, it is clear that this was only in a situation where the cancellation was made by an insurer, which is governed by a different statutory scheme relating to cancellation than a premium finance agency (see *Matter of ELRAC, Inc. v White, supra* at 547; Vehicle and Traffic Law § 313).

In addition, section 18 (5) cannot be construed so as to provide that an insured had a right of review of a premium finance agency's cancellation of an assigned risk automobile insurance policy, and had to be advised of such a right. When considering

the correspondence between the Insurance Department and the NYAIP surrounding the 1992 amendments to the NYAIP's rules, it is clear that section 18 (5) was added to reflect a 1991 amendment to Banking Law § 576 (*see* L 1991, ch 735, § 3), which dealt with the calculation of the refund the insured is to receive upon cancellation (*see Matter of Preferred Mut. Ins. Co. v Rollo,* 172 Misc 2d 631, 633 [1997]). In contrast, nothing in the correspondence indicated any intent to change the rules' previous pronouncement that an insured did not have the right to have a premium finance agency's cancellation of an assigned risk automobile insurance policy reviewed, and did not have to be advised of such a right.

In summary, we conclude that at the time Capitol cancelled Montoya's insurance policy pursuant to the power of attorney, no statute or NYAIP rule required Capitol to notify Montoya of a right of review of the cancellation. Accordingly, in effect, upon reargument, the Supreme Court should have vacated its prior order and judgment, denied the petition, dismissed the proceeding, and directed the parties to proceed to arbitration.

SCHMIDT, J.P., SANTUCCI and SKELOS, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, with costs payable by the petitioner and, in effect, upon reargument, the order and judgment dated April 23, 2004, is vacated, the petition is denied, and the proceeding is dismissed.